## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,                                    Case No. 3:19-md-2885

                                               Judge M. Casey Rodgers
                                               Magistrate Judge Gary R. Jones

This Document Relates to:

*United States of America v. 3M Company*
Case No. 3:20-mc-55
_____/

## ORDER

Pending before the Court is the Government's motion to quash

Defendants' non-party deposition subpoena to Mr. Andy Toyama (an

employee of the Department of Defense) pursuant to Federal Rule of Civil

Procedure 45 and *United States ex rel. Touhy v. Ragen*, 340 U.S. 462

(1951) ("*Touhy*").  MC ECF No. 1.[1]  Magistrate Judge Rom A. Trader

transferred the motion to quash from the District of Hawaii to this Court on

October 5, 2020, MC ECF No. 15, and Defendants have filed a response in

opposition to the motion, MC ECF No. 19.  For the reasons discussed

below, the Government's motion is **DENIED**.

_____

[1] For ease of reference, citations to the docket in this miscellaneous matter (Case No. 3:20-mc-55-MCR-GRJ) are "MC ECF No. __."  Citations to the docket in the MDL (Case No. 3:19-md-2885-MCR-GRJ) are "MDL ECF No. __."

## I.  BACKGROUND

This multidistrict litigation is a collection of products liability actions concerned with whether Defendants were negligent in their design, testing, and labeling of the nonlinear dual-ended Combat Arms Earplug Version 2 (the "CAEv2").  More specifically:

> Plaintiffs assert state law claims for negligence and strict product liability based on design defect and failure-to-warn theories, as well as warranty, misrepresentation, fraud, gross negligence, negligence per se, and consumer-protection claims.  Plaintiffs' design defect claims target two features of the CAEv2, alleging that: (1) its stem was too short for certain users—primarily those with medium to large ear canals—to insert the device deeply enough into their ears to obtain the airtight seal necessary to provide hearing protection; and (2) when the earplug was inserted according to standard fitting instructions, the positioning of the opposing flanges relative to the outer ear caused the basal edge of the third flange of the non-inserted side of the earplug to press against some users' ear canal openings and fold up, causing imperceptible loosening of the seal, which, they claim, results in little to no hearing protection for the user.  Plaintiffs' failure-to-warn claims are based on allegations that Defendants failed to provide warnings regarding the alleged dangers inherent in the use of the CAEv2.

MDL ECF No. 1280 at 16–17.  Plaintiffs are servicemembers, veterans, and civilians seeking damages in this action for hearing loss, tinnitus, and related injuries caused by their use of the CAEv2.  MDL ECF No. 704.  Defendants dispute these allegations.  MDL ECF No. 959.

The Government is not a party to this litigation, MDL ECF No. 704 at ¶¶ 16-20, but its relationship to this matter is undeniable.  The docket

2

reflects litigation between the parties over the discoverability of government records, *see, e.g.*, MDL ECF Nos. 977, 1154, 1258, and, until recently, Defendants attempted to invoke the government contractor defense as a shield from state tort liability for those plaintiffs claiming injury from using the CAEv2 during their military service, *see* MDL ECF No. 1280 (denying Defendants' motion for summary judgment based on the government contractor defense and granting Plaintiffs' motion for summary judgment on the same as a matter of law).

Consequently, the parties have identified the United States' various agencies and employees as critical sources of third-party discovery. Relevant here, on August 27, 2020, Defendants sent the United States Army Major Nicole Kim, on behalf of the Department of Defense, a request to take the deposition of Mr. Toyama, an audiology technician who Defendants say "was involved in hearing conservation appointments that Plaintiff Lewis C. Keefer, Jr. attended at or near Schofield Barracks from 2012 through 2014."  MC ECF No. 19-1 at 2.  Defendants sought to depose Mr. Toyama regarding: "(i) Plaintiff Keefer's exposure to noise; (ii) Plaintiff's Keefer's alleged hearing loss/tinnitus injuries; (iii) Plaintiff Keefer's use of hearing protection devices, including the CAEv2; and (iv) the policies and practices regarding hearing protection devices in Plaintiff Keefer's units."

3

*Id.* at 3.  Defendants explained this testimony was relevant "to address

Plaintiff Keefer's allegations that his hearing was injured due to use of the

CAEv2 and to the extent/severity of his alleged injuries."  *Id.* at 4.

Additionally, Defendants requested that Mr. Toyama produce all

documents, communications, and correspondence concerning Plaintiff

Keefer, his exposure to noise, his hearing conservation appointments and

testing, and his selection, fitting, and use of hearing protection devices.  *Id.*

at 3.

That same day, in accordance with Pretrial Order No. 50, MDL ECF

No. 1340, Defendants issued a subpoena to Mr. Toyama.  That subpoena

was never served because, on September 2, 2020, Defendants issued two

amended subpoenas (one for Mr. Toyama's remote deposition on

September 16, 2020, and the other for the production of documents).  MC

ECF Nos. 19-2, 19-3.  The Department responded to Defendants'

subpoena duces tecum on September 11, 2020, without objection, stating

that Mr. Toyama did not have responsive documents to produce.  MC ECF

No. 19-4.

On September 15, 2020, however, the Department objected to the

deposition subpoena in a comprehensive letter to Defendants' counsel.

MC ECF No. 19-5.  The Department raised several procedural objections to

Defendants' subpoena, including that it did not allow a reasonable time to comply, sought publicly available information, and failed to identify the topics for deposition. *Id.* at 2–4. The Department also challenged the subpoenas as unduly burdensome in this case and asserted its potential cumulative impact would be "disruptive to the agency's functioning." *Id.* at 3–5. Finally, the Department argued that Defendants' request to take Mr. Toyama's deposition failed to satisfy the factors enumerated in 32 C.F.R. § 97.6(b) for the Department to consider when authorizing third-party discovery from its employees, which the Court addresses below. *Id.* at 5– 6. That same day, the Government, on behalf of the Department of Defense, filed a motion to quash Defendants' deposition subpoena, MC ECF No. 1, and supporting memorandum, MC ECF No. 1-1.

## II.  THE HOUSEKEEPING STATUTE, *TOUHY*, AND THE ADMINISTRATIVE PROCEDURE ACT

Before reaching the Government's motion, Defendants' response, and the merits of the arguments raised therein, the Court must explain the groundwork for deciding whether to quash Defendants' subpoena. Typically, the Federal Rules of Civil Procedure—specifically Rule 45— govern the production of third-party discovery and objections thereto. Fed. R. Civ. P. 45; *Citizens Union of City of New York v. Attorney Gen. of N.Y.*, 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017). Not so here because the

subject third-party is a current government employee.  Instead, the Court must look to numerous federal statutes and regulations, beginning with the Housekeeping Statute, 5 U.S.C. § 301.

The Housekeeping Statute authorizes "the head of an Executive department or military department" to "prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property."  5 U.S.C. § 301.  The antecedents of § 301, however, "go back to the beginning of the Republic, when statutes were enacted to give heads of early Government departments authority to govern internal department affairs."  *Chrysler Corp. v. Brown*, 441 U.S. 281, 309 (1979).  Congress first enacted housekeeping statutes in 1789 "to help General Washington get his administration underway by spelling out the authority for executive officials to set up offices and file government documents."  H.R. Rep. No. 85-1461 (1958), *reprinted in* 1958 U.S.C.C.A.N. 3352.  "Those laws were consolidated into one statute in 1874[,] and the current version of the statute was enacted in 1958."  *Chrysler Corp.*, 441 U.S. at 309.

In 1951, the Supreme Court looked to the Housekeeping Statute to determine whether the Attorney General properly issued a regulation

prohibiting a subordinate official of the Department of Justice from obeying a subpoena duces tecum ordering the production of records in his possession.  *Touhy*, 340 U.S. at 463.  The Court held the regulation was valid because the Housekeeping Statute authorized the Attorney General "to prescribe regulations not inconsistent with the law for the custody, use, and preservation of the records, papers, and property appertaining to the Department of Justice[.]"  *Id.* at 468.

The Supreme Court's holding prompted federal agencies to adopt so-called "*Touhy* regulations" concerning testimony by agency employees and the production of government documents.  *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991); *see also Westchester Gen. Hosp., Inc. v. Dep't of Health and Human Servs.*, 443 F. App'x 407, 409 n.1 (11th Cir. 2011).  The Department of Defense's *Touhy* regulations are codified at 32 C.F.R. § 97.1, *et seq.*, which provide in pertinent part:

> In response to a litigation request or demand for official DoD information or the testimony of DoD personnel as witnesses, the General Counsels of DoD, Navy, and the Defense Agencies; the Judge Advocates General of the Military Departments; and the Chief Legal Advisors to the JCS and the Unified and Specified Commands, with regard to their respective Components, are authorized—after consulting and coordinating with the appropriate Department of Justice litigation attorneys, as required—to determine whether official information originated by the Component may be released in litigation; whether DoD personnel assigned to or affiliated with the Component may be interviewed, contacted, or used as witnesses concerning official

> DoD information or as expert witnesses; and what, if any, conditions will be imposed upon such release, interview, contact, or testimony. Delegation of this authority, to include the authority to invoke appropriate claims of privilege before any tribunal, is permitted.

32 C.F.R. § 97.6(a). "[T]he individual seeking such release or testimony must set forth, in writing and with as much specificity as possible, the nature and relevance of the official information sought." 32 C.F.R. § 97.6(c)(2). The Department defines "official information" as:

> All information of any kind, however stored, that is in the custody and control of the Department of Defense, relates to information in the custody and control of the Department, or was acquired by DoD personnel as part of their official duties or because of their official status within the Department while such personnel were employed by or on behalf of the Department or on active duty with the United States Armed Force

32 C.F.R. § 97.3(d).

When deciding whether to authorize the release of official information or testimony, the Department "should consider the following … factors":

> (1) Whether the request or demand is unduly burdensome or otherwise inappropriate under the applicable court rules;
>
> (2) Whether the disclosure, including release in camera, is appropriate under the rules of procedure governing the case or matter in which the request or demand arose;
>
> (3) Whether the disclosure would violate a statute, executive order, regulation, or directive;

(4) Whether the disclosure, including release in camera, is appropriate or necessary under the relevant substantive law concerning privilege;

(5) Whether the disclosure, except when in camera and necessary to assert a claim of privilege, would reveal information properly classified pursuant to DoD 5200.1-R, "Information Security Program Regulation," August 1982; unclassified technical data withheld from public release pursuant to DoD Directive 5230.25, "Withholding of Unclassified Technical Data from Public Disclosure," November 6, 1984; or other matters exempt from unrestricted disclosure; and,

(6) Whether disclosure would interfere with ongoing enforcement proceedings, compromise constitutional rights, reveal the identity of an intelligence source or confidential informant, disclose trade secrets or similarly confidential commercial or financial information, or otherwise be inappropriate under the circumstances.

32 C.F.R. § 97.6(b).

Nevertheless, *Touhy* did not create or endorse an executive privilege for federal agencies to resist entirely discovery efforts by private parties. *N.L.R.B. v. Capitol Fish Co.*, 294 F.2d 868, 875 (5th Cir. 1961).[2]  Only two years after *Touhy*, the Supreme Court emphasized that "[j]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *United States v. Reynolds*, 345 U.S. 1, 9–10 (1953).  What's more, Congress amended the Housekeeping Statute in 1958 to include the

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit decided prior to October 1, 1981.

following limitation: "This section does not authorize withholding information from the public or limiting the availability of records to the public."  5 U.S.C. § 301; *see also Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 777–78 (9th Cir. 1994) (discussing the 1958 amendment to the Housekeeping Statute).

Because the Government does not have unfettered discretion to withhold discovery from federal litigants (either in the form of records or testimony), the Government's application of *Touhy* regulations does not escape judicial review.  The Eleventh Circuit, however, cabins such review to the Administrative Procedure Act ("APA") rather than Federal Rule of Civil Procedure 45.  *Moore*, 927 F.2d at 1197.[3]  Generally speaking, the APA provides two types of challenges for a dissatisfied party to seek redress in federal court.  5 U.S.C. § 706.  First, when presented with a complaint of agency inaction, a reviewing court may "compel agency action unlawfully withheld or unreasonably delayed."  § 706(1).  Second, a reviewing court may set aside a final agency action that it concludes is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law[,]" in addition to other reasons.  § 706(2).

---

[3] This standard of review is the subject of a circuit split.  Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2463.2 (3d ed.).

The scope of review under § 706(2) is narrow and requires only reasoned decisionmaking by the Government. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020). The Court must "determine only whether [the Government] examined the relevant data and articulated a satisfactory explanation for his decision, including a rational connection between the facts found and the choice made." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2569 (2019).

## III. DISCUSSION

Turning to the dispute at hand, the Government argues that the Department's decision to preclude Mr. Toyama's deposition is not arbitrary and capricious because the Department produced all of the records in its possession related to Mr. Toyama's evaluation of Plaintiff Keefer, Mr. Toyama has no independent recollection of the Plaintiff Keefer, and requiring a deposition would take Mr. Toyama away from "his important responsibilities assisting in the medical readiness of soldiers … preparing for deployments and other military missions." MC ECF No. 1-1 at 4. The Government argues—seemingly in the alternative—that Defendants' subpoena should be quashed under Federal Rules of Civil Procedure 26 and 45 because it is unduly burdensome, seeks unreasonably cumulative

11

or duplicative discovery, and failed to allow a reasonable time to comply. *Id.* at 4–7.

Defendants argue that the Department's decision to preclude Mr. Toyama's deposition is arbitrary and capricious.  MC ECF No. 19.  They contend that the Department's production of Plaintiff Keefer's medical records and Mr. Toyama's failure to recall Plaintiff Keefer's evaluations should not excuse his deposition because his testimony is "necessary to explain the significance of some of the notations [Mr.] Toyama made on [Plaintiff] Keefer's audiogram records."  *Id.* at 3.  For example, Plaintiff Keefer has attempted to use in this litigation Mr. Toyama's notes and remarks on his audiogram forms to prove use of the CAEv2.  *Id.* at 3–4. Moreover, Defendants say that Mr. Toyama's testimony is relevant to their statute of limitations defense because they plan to examine whether he told Plaintiff Keefer the results of his 2012 audiogram, which documented a "significant threshold shift" in his left ear compared to a 2007 audiogram. *Id.* at 4.  Defendants also argue that the subpoena is not unduly burdensome because any burden to prepare for and attend a remote deposition is particularly minimal.  *Id.* at 5.

Upon review of the administrative record,[4] the Court concludes that the Government's motion to quash is due to be denied.  Although there is no dispute that the Department considered the relevant *Touhy* regulations, it failed to articulate a rational connection between the facts before it and its decision to preclude Mr. Toyama's deposition.  Alternatively, Defendants' subpoena is not unduly burdensome or otherwise improper under the Federal Rules of Civil Procedure.

### A.    APA Review

In deciding whether to authorize Mr. Toyama's deposition in this case, the Department considered whether compliance would be unduly burdensome and appropriate under court rules, 32 C.F.R. § 97.6(b)(1), MC ECF No. 19-5 at 5–6, but the Government focuses exclusively on the purported burden to the Department, MC ECF No. 1-1 at 4.  The Government addresses, namely, the potential disruption to Mr. Toyama's duties and his failure to independently recall evaluating Plaintiff Keefer.  *Id.* These reasons are inapt and fail to substantiate the Department's decision.

---

[4] "[I]n reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record."  *Dep't of Commerce*, 139 S. Ct. at 2573.  To the best of the Court's knowledge, the Government's motion and Defendants' response do not present extra-record material that was not considered by the Department of Defense.

*Disruption to Mr. Toyama's duties*.  Defendants and the Court are not in the position to challenge the Department's assertion that Mr. Toyama "is responsible for medically examining soldiers who are preparing for deployments and other military missions."  MC ECF No. 19-5 at 3.  And there is no doubt that requiring Mr. Toyama's deposition *may* result in some disruption to his duties "during a time of telework and shutdowns caused by the ongoing [COVID-19] pandemic."  MC ECF No. 1-1 at 4.  Nevertheless, the Department's decision to preclude Mr. Toyama's deposition because it may interfere with his work is irrational.

First, the Department's reasoning—whether applied only to Mr. Toyama or, as the Department suggests, in the aggregate to all similarly situated employees—cannot overcome the public's right to the type of "every man's evidence" in issue here.  *Trump v. Vance*, 140 S. Ct. 2412, 2420 (2020).  If it did, the review process for federal courts would be illusory, and agency action would go unchecked.  That is, every agency could claim an employee is "too busy" to participate in discovery, and the requesting party would have little, if any, room to refute this contention for the Court to undertake meaningful review.  Instead, this type of reasoning should be exceptional because it invites an impermissible "blanket ban on all requests for testimony," *Moore*, 927 F.2d at 1198, which is tantamount

14

to an evidentiary privilege that the Government does not enjoy.  At bottom, the Government "may not refuse to comply with a subpoena by generally asserting there is a national crisis or that it cannot perform essential government functions."  *Sentinel Cap. Orlando, LLC v. Centennial Bank*, No. 6:12-cv-785-Orl-36GJK, 2013 WL 12156678, at *6 (M.D. Fla. Apr. 2, 2013); *see also In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-53, 2020 WL 6065076, at *4 (N.D. Fla. Oct. 14, 2020) ("*Parker*"); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-49, 2020 WL 5994266, at *1 (N.D. Fla. Oct. 9, 2020) ("*Schulman*").

Second, the Department has not demonstrated that it would be an *undue* burden on Mr. Toyama's duties (or the Department itself) to authorize his deposition.[5]  The Department offered mostly generalized statements about the nature of depositions in any litigation.  *See, e.g.*, MC ECF No. 19-5 at 3 ("[D]epositions are *usually* the most burdensome means of obtaining facts in litigation." (emphasis added)).  In the same vein, the Department failed to explain with any specificity how discovery in this case would interfere with Mr. Toyama's work.  At best, it advised Defendants

---

[5] The Court emphasizes the qualifier "undue" because that is what the Department's *Touhy* regulations require the agency to consider.  *See* 32 C.F.R. § 97.6(b)(1) ("Whether the request or demand is unduly burdensome or other inappropriate under the applicable court rules[.]").

their subpoena is "unreasonable and unduly burdensome because it seeks to take Mr. Toyama from these important responsibilities to the detriment of the readiness of the military." *Id.* This sweeping statement, which does nothing to explain Mr. Toyama's workload or schedule, is insufficient to survive APA review because it does not evince any effort by the Department to examine the actual evidence before it. *OhioHealth Corp. v. U.S. Dep't of Veteran Aff.*, No. 2:14-cv-292, 2014 WL 4660092, at *6 (S.D. Ohio Sept. 17, 2014); *see also In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-54, 2020 WL 6140561, at *4 (N.D. Fla. Oct. 19, 2020) ("*Donaldson*"). The fact that any time may be required by Mr. Toyama to prepare for or attend a deposition is not a cognizable burden—let alone an undue burden—on the Department.

Lastly, the Department's reasoning blinks reality. It is common for individuals with time-consuming professions to be the subject of discovery. Mr. Toyama is no exception, but the Court suspects he does not work all the time. Yet, the Department failed to offer any rational explanation as to why Mr. Toyama's remote deposition or production could not take place around his work obligations and at a time convenient for him. Although this Court must defer to the Department's judgment as to "the time and effort involved in preparing the employees for their depositions and testimony

and how that time commitment might hamper their ability to fulfill their duties," *Solomon v. Nassau Cty.*, 274 F.R.D. 455, 459 (E.D.N.Y. 2011),[6] its failure to consider accommodation for a brief deposition was error.  *Rhoads v. U.S. Dep't of Veteran Aff.*, 242 F. Supp. 3d 985, 994–95 (E.D. Cal. 2017); *Ceroni v. 4Front Engineered Sols.*, 793 F. Supp. 2d 1268, 1278 (D. Colo. 2011); *see also Schulman*, 2020 WL 5994266, at *6.

    *Mr. Toyama inability to recall his evaluations of Plaintiff Keefer*.  The Government argues the Department's decision is appropriate because Mr. Toyama "has no independent recollection of [Plaintiff Keefer]" and, thus, "there is little or nothing that a deposition would add."  MC ECF No. 1-1 at 4.  This reasoning ignores critical facts about the asserted scope of Defendants' deposition.  Defendants plan to question Mr. Toyama about "the significance of some of the notations [Mr.] Toyama made on [Plaintiff] Keefer's audiogram records," which are relevant to Plaintiff Keefer's claims and Defendants' statute of limitations defense.  MC ECF No. 19 at 3–4. Mr. Toyama does not need an independent recollection of his evaluations to explain Plaintiff Keefer's medical records or his practices as an audiology

---

[6] *See also COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 278 (4th Cir. 1999) ("When an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources.").

technician.  *Brown v. U.S. Dep't of Veterans Aff.*, No. 2:17-cv-1181-TMP,

2017 WL 3620253, at *8 n.12 (N.D. Ala. Aug. 22, 2017); *see also*

*Schulman*, 2020 WL 5994266 at **6–7.

    *The Department's proposed alternatives.*  To the extent the

Government relies on the Department's past production of medical records

and its offer to provide a declaration from Mr. Toyama in lieu of authorizing

his deposition, MC ECF No. 1-1 at 6; MC ECF No. 19-5 at 4, 6, that

reasoning is arbitrary and capricious.  As explained above, Defendants

sought to depose Mr. Toyama on more than just Plaintiff Keefer's

evaluation results and the information readily available in his medical

records.  If there is any overlap between the documents and Mr. Toyama's

anticipated testimony, the documents cannot express Mr. Toyama's

testimony "with the clarity and tone as he personally can in his deposition."

*In re Vioxx Prods. Liab. Litig.*, 235 F.R.D. 334, 346 (E.D. La. 2006).

Additionally, "[a] declaration is simply not an adequate substitute for live

testimony, such as a deposition."  *Cavanaugh v. Wainstein*, No. 05-123

(GK), 2007 WL 1601723, at *10 (D.D.C. June 4, 2007).  "[S]uch an

approach eschews the opportunity for opposing counsel to probe the

veracity and contours of the statements," and "counsel propounding the …

18

question is denied the opportunity to ask probative follow-up questions." *Alexander v. F.B.I.*, 168 F.R.D. 113, 121 (D.D.C. 1998).

In sum, the Court concludes the Department's decision to preclude Mr. Toyama's deposition is arbitrary and capricious because it is not supported by the administrative record.  The Department failed to examine critical facts as to the relevance of Mr. Toyama's deposition, other than that he lacked an independent recollection of Plaintiff Keefer.  The Department, instead, relied on generalized assertions concerning Mr. Toyama's responsibilities and the burden of third-party discovery, which does not comport with the Department's *Touhy* regulations that require it to consider whether compliance would be an *undue* burden.  Finally, the Department placed inordinate emphasis on the production of Plaintiff Keefer's medical records and its offer to make available a declaration from Mr. Toyama in lieu of the requested deposition.

## B.    Federal Rules of Civil Procedure

The Government's reliance on the Federal Rules of Civil Procedure fares no better.[7]  The Court must quash a subpoena that "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).  The

---

[7] Although the Court must apply the APA's arbitrary and capricious to disputes such as this until the Eleventh Circuit or United States Supreme Court says otherwise, the Court will address these arguments because it leads to the same result as APA review.

Government, as the movant seeking to quash the subpoena, bears the burden of proof on this issue. *In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1306 (S.D. Fla. 2012); *Fadalla v. Life Auto. Prods., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007). Courts consider a variety of factors to determine whether a subpoena is unduly burdensome—the relevance of the information requested, the requesting party's need for discovery, the breadth of the request, the time period covered, the particularity of the request, and the burden imposed—but it is typically required that the movant submit an affidavit or other evidence revealing the nature of the asserted burden. *Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 449 (N.D. Tex. 2015); *see also John v. Keller Williams Realty, Inc.*, No. 6:19-cv-1347-Orl-40DCI, 2019 WL 7482200, at *2 (M.D. Fla. Nov. 19, 2019) ("Claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome.").

Here, the Government has not presented an affidavit or other evidence in support of its claim of undue burden. This alone is a basis to reject the Government's claim. *Green v. Cosby*, 152 F. Supp. 3d 31, 37 (D. Mass. 2015). Nevertheless, the Court has considered the evidence proffered by the Government regarding Mr. Toyama's employment, his

20

inability to independently recall Plaintiff's evaluations, and any "cumulative impact" compliance would have on the Department of Defense, MC ECF No. 1-1 at 6–7, and concludes that Defendants' subpoena does not present an undue burden on the Department or Mr. Toyama.  Defendants have asked Mr. Toyama to attend a brief, remote deposition so he may testify to his area of expertise as an audiology technician and explain his notations in Plaintiff Keefer's medical records.  Compliance may be an inconvenience for Mr. Toyama, but this is no different from a Rule 45 deposition subpoena issued to any non-party.

Defendants' subpoena is not otherwise improper under the Federal Rules of Civil Procedure.  The subpoena does not seek "unreasonably cumulative or duplicative" discovery, Fed. R. Civ. P. 26(b)(2)(C), because Defendants plan to depose Mr. Toyama on matters not readily apparent in Plaintiff Keefer's medical records.  To the extent there may be any overlap between Plaintiff Keefer's records and Mr. Toyama's testimony, it is not so unreasonable as to warrant quashing the subpoena.

Lastly, the subpoena gave the Department and Mr. Toyama "a reasonable time to comply."  Fed. R. Civ. P. 45(d)(3)(A)(i).  This Court has held that this rule "does not specify what constitutes a reasonable time to comply."  *Minor I Doe through Parent I Doe v. School Bd. for Santa Rosa*

*Cty., Fla.*, No. 3:08-cv-361-MCR-EMT, 2009 WL 10674249, at *2 (N.D. Fla. Nov. 23, 2009).  Instead, "common sense dictates that reasonableness is determined in relation to the extent of the materials requested and other underlying circumstances in the case."  *Id.*  Here, the subpoena required a brief remote deposition more than one week after the service date, to be exact seven *business* days.  It is obvious that the Department was able to respond to the merits of Defendants' subpoena before the return date because it sent Defendants a comprehensive letter with its position on September 15, 2020.  MC ECF No. 19-5.  Indeed, the Government's argument is not well taken because, as explained above, the Department did not make any effort to accommodate Defendants' request or seek an extension of time for compliance.

In sum, the Government's motion to quash Defendants' subpoena under the Federal Rules of Civil Procedure is due to be denied because the subpoena is not unduly burdensome, does not seek unreasonably cumulative or duplicative discovery, and allowed Mr. Toyama and the Department of Defense a reasonable time to comply.

## IV.  CONCLUSION

Accordingly, it is **ORDERED** that the Government's motion to quash, MC ECF No. 1, is **DENIED**.  Defendants **must** serve a copy of this order by

email on Jacqui Snead at the Department of Justice, United States Army

Major Nicole M. Kim, and Plaintiffs' Lead Counsel Bryan F. Aylstock.

**DONE AND ORDERED** this 26th day of October 2020.

_s/Gary R. Jones_

GARY R. JONES
United States Magistrate Judge